STATE of Wisconsin, Plaintiff-Respondent,

v.

Eddie B. ROBINSON, Defendant-Appellant.†

Court of Appeals

*No. 92–2447. Submitted on briefs February 26, 1993.—Decided May 5, 1993.*

(Also reported in 501 N.W.2d 831.)

†Petition to review denied.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Waring R. Fincke* of *Dvorak & Fincke, S.C.* of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Daniel J. O'Brien*, assistant attorney general.

Before Brown, Anderson and Snyder, JJ.

SNYDER, J. Eddie B. Robinson was charged with and convicted of first-degree intentional homicide while using a dangerous weapon, and as a repeat offender. Robinson appeals from an order denying post-conviction relief and argues that his trial counsel was constitutionally ineffective for failing to request a severance of the defendants who were tried jointly for the crime, which resulted in an unfair trial. Because we conclude that Robinson's trial counsel was not deficient in his performance, we affirm.

The procedural facts are undisputed. This matter arose out of the shooting death of Dorsey Carr outside of a Kenosha tavern on October 10, 1984. Robinson was charged as the principal perpetrator of the shooting and a codefendant, Jimmie Campbell, was charged as party to the crime. In February of 1985, Robinson and Campbell were tried jointly. The jury convicted Robinson but acquitted Campbell.

Robinson brought a postconviction motion for a new trial prior to sentencing on the grounds that new exculpatory evidence was discovered from statements Campbell had given to investigators after the trial. Campbell was unavailable as a witness during the trial because he exercised his constitutional right under the fifth amendment not to testify. Robinson asserted that

as a result of Campbell's unavailability to testify, he was substantially prejudiced and denied the right to a fair trial. On April 2, 1985, the trial court denied Robinson's motion. The court sentenced Robinson to life imprisonment plus ten years, consecutive. No direct appeal was taken from the judgment of conviction.

On March 17, 1986, Robinson filed a postconviction motion for relief pursuant to sec. 974.06, Stats., alleging prosecutorial misconduct. Robinson claimed that the state deliberately charged and tried he and Campbell jointly in order to deny his constitutional rights to present a defense, to confront his accusers, and to a fair trial. The trial court denied this motion, concluding that the essence of the allegations was already considered and denied on April 2, 1985 and that the appropriate remedy was an appeal from that order, not a sec. 974.06, Stats., motion.[1]

On June 30, 1992, Robinson, through new counsel, filed a second postconviction motion under sec. 974.06, Stats. Robinson alleged that his trial counsel and first appellate counsel, Myron Keyes, provided ineffective assistance of counsel by failing to request a severance of the defendants. The state objected to the motion on the basis that Robinson's postconviction motion was barred by sec. 974.06(4), which generally requires a prisoner to raise all questions available to him in one motion. *See State ex rel. Dismuke v. Kolb*, 149 Wis. 2d 270, 273, 441 N.W.2d 253, 254 (Ct. App. 1989). On September 1, 1992, the trial court, bypassing the state's procedural objection, decided the motion on the

---

[1] A direct appeal was taken from the denial of Robinson's sec. 974.06, Stats., postconviction motion. The trial court's order denying postconviction relief was affirmed in an unpublished opinion by this court in *State v. Robinson*, No. 86–0825 (Wis. Ct. App. Mar. 11, 1987).

merits and entered an order dated September 14, 1992 denying postconviction relief. Robinson appeals from this order.

The first issue before this court on appeal is whether sec. 974.06(4), Stats., precludes Robinson from bringing a second postconviction motion for relief on a claim of ineffective assistance of counsel.[2] Section 974.06(4) provides that:

> All grounds for relief available to a person under this section must be raised in his or her original, supplemental or amended motion. Any ground finally adjudicated or not so raised, or knowingly, voluntarily and intelligently waived in the proceeding that resulted in the conviction or sentence or in any other proceeding the person has taken to secure relief may not be the basis for a subsequent motion, unless the court finds a ground for relief asserted *which for sufficient reason was not asserted* or was inadequately raised in the original, supplemental or amended motion. [Emphasis added.]

The state argues that, according to sec. 974.06(4), Stats., Robinson may not raise an ineffective assistance of counsel claim in a successive postconviction motion because he failed to raise the issue in his first motion. The state further argues that the mere allegation of ineffective assistance of counsel, absent corroborating evidence, does not meet the "sufficient reason" exception under the statute for allowing such a successive motion. The state contends that the evi-

[2] Although the trial court did not rule on this issue, we deem it appropriate to consider on appeal since the state preserved the issue for review by properly bringing it to the trial court's attention in its response to Robinson's motion for postconviction relief.

dence indicates that Robinson was satisfied with his attorney, based on the fact that he was retained up until the second postconviction motion. Finally, the state argues that Robinson cannot now claim he was unaware of the severance issue since it is likely that the issue was discussed with Keyes as a strategy but dismissed. We disagree.

Section 974.06(1), Stats., allows a prisoner to seek postconviction relief on jurisdictional or constitutional grounds by moving the court that imposed the sentence to vacate, set aside or correct the sentence. However, we realize that sec. 974.06 does not create an unlimited right to file successive motions for relief and that the purpose behind sec. 974.06(4) is to compel a prisoner to raise all questions available to him in one motion. *Dismuke*, 149 Wis. 2d at 273, 441 N.W.2d at 254.

In his first sec. 974.06, Stats., motion, Robinson argued that the prosecutor wrongfully charged and tried both defendants together, which resulted in an unfair trial. In his second sec. 974.06 motion, Robinson argues that his trial counsel provided ineffective counsel by failing to request severance once the prejudicial nature of Campbell's defense became apparent. We acknowledge the similarity of these claims, but also recognize one important difference. While both motions claim that the joint trial was prejudicial, the blame was attributed to the state in the first motion and to his trial counsel in the second motion. This difference is critical because the ineffectiveness claim raised by Robinson in his second sec. 974.06 motion could not have been raised earlier due to the fact that Keyes represented him both at trial and during the first postconviction motion proceedings. Under these circumstances, we cannot expect Keyes to assert his

own ineffective assistance of counsel on appeal. We agree with Robinson that it would be unfair to hold him to the action of his previous lawyer when it is those actions which are now claimed to have deprived him of a fair trial.

We conclude that in circumstances where a defendant is represented by the same counsel both at trial and on appeal, the inability of the defendant's trial counsel to assert his own ineffectiveness constitutes a "sufficient reason" under sec. 974.06(4), Stats., for not asserting the matter in the original sec. 974.06 motion.[3] Accordingly, we conclude that Robinson's successive sec. 974.06 motion alleging ineffective assistance of counsel is appropriate.

We now turn to the merits of Robinson's ineffective assistance of counsel claim and the relevant facts. The state relied primarily on the testimony of Lorraine Gardner, an eyewitness to the shooting, and expert scientific witnesses in its principal case against Robinson and Campbell. Gardner testified that she was with Carr outside of the tavern when they encountered Robinson, Campbell and others. Gardner claimed that she saw Campbell pass a gun to Robinson, who then stepped back six to eight feet and fired a shot at Carr. However, the state's pathologist testified that the gun was fired at close range, no further than a foot away, and could have been touching Carr's pants when fired. Robinson's defense was premised on discrediting Gardner, the only eyewitness called by the state, by using

---

[3] We note that other jurisdictions with statutes similar to sec. 974.06(4), Stats., have recently concluded likewise. *See, e.g., McBride v. State,* 595 N.E.2d 260, 262 (Ind. App. 1992); *Odem v. State,* 483 N.W.2d 17, 19 (Iowa App. 1992); *Ex parte Besselaar,* 600 So. 2d 978, 979 (Ala. 1992).

the state's expert witnesses to establish that Robinson could not have fired the fatal shot based on where Gardner said he was standing.

A more detailed account of the incident was provided by witnesses called for Campbell's defense by his attorney, Geoffrey Dowse. Johnnie Steel testified that he observed Campbell and others whom he could not identify wrestling with the victim in an attempt to take away a sawed-off shotgun which Carr had been carrying. Steel also testified that he saw Robinson standing in the street near a parked car with a shotgun and saw him shoot Carr during the struggle over Carr's gun. However, according to Steel, Robinson was seven to ten feet away from Carr at the time he allegedly fired the shot. Steel further claimed that he overheard Campbell say to Robinson, "You done shot him, get out of here."

Dowse also called Johnnie Freeman, another eyewitness, who did not see the shooting but testified that he saw Robinson at the tavern with a sawed-off shotgun and heard shots approximately fifteen minutes later from what he believed to be a .12 gauge shotgun. Dowse then called a firearms expert who corroborated the state's expert witness, testifying that the victim was shot with a .20 gauge shotgun at or near contact with the victim, not six to eight feet away.

Robinson argues that Keyes' failure to request a mistrial and a severance when Dowse's strategy to implicate Robinson by presenting exculpatory evidence for Campbell became apparent was "well outside the professional norms" and was "clearly deficient performance." He argues that he was prejudiced as a result because he was forced to defend against the attack of both the prosecutor and Campbell. We disagree.

According to *Strickland v. Washington*, 466 U.S. 668, 687 (1984), the two elements necessary to prove ineffective assistance of counsel are deficient performance by counsel and prejudice to the defendant. The test for deficient performance is whether counsel's assistance was reasonable under the facts of the particular case, viewed as of the time of counsel's conduct. *State v. Pitsch*, 124 Wis. 2d 628, 636–37, 369 N.W.2d 711, 716 (1985). Under the second component of the test, the question is whether counsel's errors were so serious that the defendant was deprived of a fair trial and a reliable outcome. *Id.* at 640–41, 369 N.W.2d at 718.

The trial court's findings of fact regarding what happened will not be overturned unless clearly erroneous. *Id.* at 634, 369 N.W.2d at 714. However, the ultimate determinations of whether counsel's performance was deficient and prejudicial to the defense are questions of law which this court reviews independently. *Id.* at 634, 369 N.W.2d at 715. The state urges that, in considering the two prongs of the *Strickland* test, this court should use the "clear and convincing" burden of proof which applies to sec. 974.06, Stats., motions. *See State v. Walberg*, 109 Wis. 2d 96, 102, 325 N.W.2d 687, 690 (1982), *rev'd on other grounds sub nom. Walberg v. Israel*, 766 F.2d 1071, *cert. denied*, 474 U.S. 1013 (1985). The state did not raise or argue this standard in the trial court, and we see no need to consider it for the first time on appeal. Instead, we use the standard analysis outlined in *Strickland*.

Judicial review of counsel's performance is highly deferential and reviewed from counsel's perspective at

the time of trial, not based on hindsight. *Strickland*, 466 U.S. at 687. A defendant is not entitled to a perfect defense or the best defense, but only to one which gives him reasonably effective representation. *State v. Harper*, 57 Wis. 2d 543, 557, 205 N.W.2d 1, 9 (1973). The fact that the defendant believes counsel should have conducted a defense differently does not in itself establish that counsel's performance was ineffective. *See State v. Rock*, 92 Wis. 2d 554, 560, 285 N.W.2d 739, 742 (1979). Rather, the defendant must show that counsel's representation fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 687.

Keyes explained why he did not ask for a severance in part as follows:

> Our defense was that even if the jury believed that Eddie Robinson had a shotgun, all of the witnesses indicated that he was some distance away from the victim, and the scientific evidence was incontrovertible that the weapon was at or near—within inches at the farthest from Carr's leg . . . . So I thought that [the evidence] was exculpatory even if the jury believed that Mr. Robinson had a shotgun, and even if there were two shots, that the shot from his gun was not the one that hit and killed Mr. Carr.

Based upon our review of the record, we conclude that Keyes' decision not to request severance and his rationale for that decision were professionally and objectively reasonable.

Although Gardner and Steel testified that they saw Robinson fire the shot, their testimony also provided exculpatory evidence for Robinson and introduced a degree of doubt. Keyes was able to establish that while Robinson was at the scene and may have been carrying a gun, he was too far away to have

fired the fatal shot based on the expert scientific evidence and the eyewitness accounts given by Steel and Gardner. Keyes also used Steel's testimony that the victim was engaged in a struggle over his own gun and Freeman's testimony that the gun carried by Robinson was a .12 gauge shotgun, not a .20 gauge shotgun, which caused the fatal wound to present a plausible theory to the jury that the victim was killed in the struggle over his own gun.

There is no question that the testimony of Steel and Freeman, who were called for Campbell's defense, was damaging to Robinson. However, parts of their testimony were exculpatory to Robinson as well. Further, the record indicates that had Robinson been tried separately, the state would have relied on the testimony of Steel, Freeman, and perhaps Gardner.[4] Realizing this, it was not unreasonable for Keyes to decide not to seek severance of the defendants and instead to rely on the credible defense which he had already presented. Simply because the jury ultimately did not believe Keyes' theory and found beyond a reasonable doubt that Robinson fired the fatal shot is not enough to support Robinson's ineffective assistance of

---

[4] First, as the state correctly argues, the allegations in the criminal complaint against Robinson are based almost entirely on statements made by Steel, not Gardner. Second, the prosecutor informed the court that he chose to offer Gardner's testimony in an effort to establish the guilt of both defendants and knew, based on Campbell's opening statement, that he would call Freeman and Steel. Also, the prosecutor in his closing argument relied heavily on the testimony of Freeman and Steel to implicate Robinson in the shooting. We agree with the state that the logical inference from these facts is that the prosecution would have called both Steel and Freeman as state witnesses if the matter was tried only against Robinson.

counsel claim. Effective representation is not to be equated with a not guilty verdict. *Harper*, 57 Wis. 2d at 557, 205 N.W.2d at 9.

Accordingly, since Robinson's attorney exercised reasonable professional judgment in not requesting severance based on all the circumstances before him at the time of trial, we conclude that his performance was not deficient such that Robinson was denied the right to effective assistance of counsel.[5]

*By the Court.*—Order affirmed.

---

[5] Since we find no deficient performance, we need not address the prejudice prong of the analysis or speculate whether a severance request would have been granted.